## CITY OF NEW ORLEANS v. PAINE, U. S. Deputy-Surveyor.

*(Circuit Court, E. D. Louisiana. February 2, 1892.)*

1. PUBLIC LAND GRANTS—LOCATION—JURISDICTION.
    In the case of public grants of land without definite and ascertained limits, the courts cannot protect the alleged rights of the grant-owners until they are located by public survey, adopted, and approved; and the mere decision of the secretary of the interior as to the proper boundaries will not give the courts jurisdiction to control the subsequent official survey directed by such decision.

2. SAME—SURVEY—DECISION OF SECRETARY OF INTERIOR.
    The secretary of the interior fixed the meaning of the words, "as far as Lake Maurepas," as contained in the ancient Spanish grant known as "Dupard's," to mean as far as a line drawn from the lowest point of the southern shore of the lake at right angles to a line drawn from the Mississippi river through the center of the grant from front to rear; and the surveyor general, directed to make the survey under such decision, ascertained and fixed the lowest point on the southern shore of the lake as it was located in 1769, the date of the grant. The succeeding secretary of the interior did not approve such survey, and directed it to be made upon the basis of the boundary of the lake as it existed in 1888, the date of the former secretary's decision. *Held,* that the court was without jurisdiction to interfere to restrain such survey on the ground that the rights of the owner of the grant were conclusively fixed by the decision of the secretary of the interior, and would be taken away under the guise of interpreting such decision.

In Equity. Bill filed by the city of New Orleans against R. B. Paine, United States deputy-surveyor, to enjoin a survey. Hearing on bill, demurrer, exhibits, etc. Injunction denied.

*J. L. Bradford,* for complainant.

*Wm. Grant,* for defendant.

BILLINGS, District Judge. This cause was heard upon the bill itself and exhibits, upon an application for an injunction *pendente lite,* and upon the demurrer. The cause is really to be heard and decided on the bill of complaint so far as its allegations cover the matters involved, as it is met on the part of the defendant by a general demurrer. The case made by the bill is as follows: The city of New Orleans, as legatee under the McDonough will, had vested in it a complete grant, known as "Dupard's," made by the Spanish government before the cession of the territory of Orleans to the United States, the grant bearing date in 1769. This grant had been recognized as a complete grant by Secretary Lamar. 6 Dec. Dep. Int. p. 473. The only question left open by his decision is that of the point from which the northern boundary of the grant should start as the point of beginning in actual survey. Secretary Lamar, in 1888, fixed the meaning of the words contained in the grant, "as far as Lake Maurepas," to mean as far as a line drawn from the lowest point of the southern shore of Lake Maurepas at right angles to a line drawn from the Mississippi river through the center of the grant from front to rear. The surveyor general was directed to make the survey under this decision, and he made it, ascertaining and fixing the lowest point of the southern shore of the lake, as that body of water was shown to have been located in 1769, the date of the grant. The survey so made was never approved by the department, but, on the application of the commissioner of the general land-office, Acting Secretary Chand-

ler, in 1891, disapproved of the survey already made, which was, as has been stated, upon the basis of the starting point of the boundary as the lake existed in 1769, the date of the grant, and directed instructions to be given to the surveyor general to make the survey upon the basis of the starting point of the boundary as the lake existed in 1888, the date of Secretary Lamar's decision. To arrest and enjoin this last survey the bill is filed.

The solicitor for the complainant urges that under the decision of the secretary of the interior the rights of his client were conclusively fixed, and that under the guise of interpreting that decision his rights are to be totally taken away; that the decision meant to refer to the lake as it was located at the time of the grant, and that such has been the change in its location since that time that to make its present location, or that of 1888, the basis of boundary, would leave the city of New Orleans no land whatever under this grant; that, the right having been fixed, the court ought to interfere to prevent erroneous and destructive construction of a decision which the department does not attempt to change, but only to interpret. The solicitor for the defendant, the district attorney, on behalf of the defendant, besides his argument on the merits, presents to the court the objection that the court is entirely destitute of jurisdiction to interfere with the survey in the present state of the case in the land department, and upon the facts presented by the bill. It is this question of jurisdiction or authority alone upon which I feel called upon to pass.

I think, with reference to this question, two propositions are found to be the result of all the decisions of the supreme court of the United States: *First*, that, where there is a complete grant of a specific tract of land according to ascertained boundaries, the grantee may sue in ejectment, and protect his rights through the courts. *Secondly*, that where, and to the extent that, there are no ascertained limits, these limits must be ascertained by the executive department, which is by law charged with that duty, and that courts of justice cannot, in the first instance, fix by metes and bounds the location of the grant. This results from the fact that the administration of all the lands, public and private, was, upon the cession, vested in the first instance in the United States government, —the public lands, for the purpose of sale and practical location; the private lands, for the purpose of practical location and separation and demarkation from other public lands and private lands. It would open the door to endless confusion unless these grants which needed definite location by the ascertainment of boundaries and by survey were first, by practical survey, to be severed by the public domain, and separated from the lands of others. Most certainly must this be true of a grant, one boundary of which needs to be determined before a conclusive location and survey could be made. I am aware that there is a distinction between complete grants, with completely ascertained boundaries, made before the cession to the United States, and grants made afterwards. But even in the former case, where, as here, a boundary is claimed to be established through the decision of the secretary of the interior by

reference to a point, as to the practical location of which the department has given instructions, as a rule of public order and general good, it must be true that the location by public survey must be made so far as the boundary thus established is concerned; for the public survey concerns not alone one grantee, but rival claimants who claim the identical territory or a portion of it, and adjacent owners, and the residue of the public lands. If the claim which is the basis of this suit needed no location by the secretary of the interior, and no definition by survey, except with reference to the public domain and the claimants under other grants, the rule above stated, it seems to me, would still obtain. It is to be observed that it is the action of the department upon which alone the complainant's boundary has been in location established. It follows, as it seems to me, the matter of fixing the boundaries of this grant, although a complete grant antedating the cession, was still wholly within the authority of the land-officers of the executive department, and wholly outside that of the courts.

Then comes the question, has the land-office reached such a point or stage in its proceedings that courts can lay hold of the matter? The boundary has been in theory reached. A survey has been made and reported, but was not satisfactory to the proper officer. The survey has been disapproved, and another survey directed. I understand that it is the survey—the practical location of the grant among the other private and the public lands—which must be effected, and in the proper way evidenced, before the courts can have any jurisdiction over the matter. Great hindrance would be opposed to the government in the location of this grant if this court should now, without any power to direct another survey, and indeed without any jurisdiction at all over the surveyor general, enjoin the defendant from making the second survey upon the ground that the officer setting aside the former survey, and directing the second, had for any reason erred. It would leave the land department incapacitated by the action of the court from proceeding in the matter of any survey; in other words, it would arrest and forever interrupt a survey, and thus leave the action of the land-office perpetually incomplete. My conclusion, therefore, is that, no matter how much ground the complainant has for urging that the eastern or further boundary of the grant is to be reached and ascertained by taking the indicated point on the shore of the lake as it was at the time of the execution of the grant, he can now, and until the final and complete survey, sanctioned in the ordinary mode, has been made, urge it only before the officers of the land department; that until then it is a question to be determined by the executive, and not by the judicial, department. The application for the injunction must be denied, and the demurrer maintained.